Ronnie BARKER, by his next friend, Mrs. Lee Butcher, Respondent,

v.

EAST SIDE BUILDING CORPORATION, a corporation, Appellant.

No. 23189.

Kansas City Court of Appeals. Missouri.

Dec. 5, 1960.

Thomas E. Deacy, Richard F. Adams, and Deacy & Deacy, Kansas City, for appellant.

Thomas J. Conway, Jr., Popham, Thompson, Popham, Trusty & Conway, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, by his mother as next friend, sued defendant for damages suffered by him when his ankle was broken while playing with a merry-go-round located on its premises. The verdict and judgment was for $3,000, and defendant appeals.

Defendant owned an apartment house wherein plaintiff resided with his mother. It maintained a children's playground on its property, for the use of the children of parents who occupied its apartments. Among the amusement devices maintained thereon was a children's merry-go-round. This device consisted of a hexagonal platform, sloping from the outer side, or seat, toward the center. It was mounted parallel to the ground on a steel shaft, which was set in concrete. It was so mounted and constructed as to permit it to revolve on its axis when pushed. Children could sit on the edge of the platform and propel it with their feet, or they could push it while standing or running on the ground. Pictures, taken at various angles, were in evidence. They depict iron rods, acting as braces, radiating from the center shaft, at a point some eight or nine inches above the ground surface, to the edge of the platform. These rods are unguarded. The edge of the platform was, on the southern side, from 16½ to 17 inches from the ground but, due to the fact that the playground at

this point slopes to the north, the northern side was at least 19 inches above the ground, according to defendant's evidence, and 22 inches, according to plaintiff's testimony.

There was testimony to the effect that plaintiff, at the time he was injured, was ten years and four months of age; that he was lying on his back, under the platform, on the north side, propelling the merry-go-round by pushing against the radial rods with his feet; that other children were riding on the platform; that he had played in this manner ever since he had lived at the apartment, about a year; that other children had, on various occasions, gotten under the platform on the north side and played in this manner, while still others rode the merry-go-round; that defendant's then superintendent had seen children under the platform playing in this manner; that its janitor had been present when plaintiff was under the platform; and that neither they, nor any other agent of defendant, had ever warned plaintiff or other children of danger to them because of such conduct.

While plaintiff was in this position, his knee was struck by one of the radial rods and his foot was thereby forced against the ground so that both bones of his ankle were broken. Since no point is made regarding the amount of the judgment, it is unnecessary to detail the extent of plaintiff's injuries.

There was much testimony to the effect that devices similarly constructed are manufactured and sold to schools, individuals and institutions, to be used on children's playgrounds. However, at least one witness for defendant, who had sold such equipment for many years, stated that a merry-go-round, such as this one, should be installed on level ground. The north side of the platform here was at least two inches higher than was recommended by the manufacturer, due to the tilt of the ground.

Mr. Hardy, a qualified and practicing architect, testified for plaintiff to the effect that, from his experience in planning children's playgrounds, this device should have been so constructed as to have prevented children from playing under it; that such could have been prevented by attaching a metal skirt extending from the edge of the platform or seat, downward, or by masonry built from the ground up. He also stated protection to children could have been provided by shielding the brace rods so as to prevent danger to a child who got under the platform.

Defendant's first contention is that, as a matter of law, it was not guilty of any negligence. In Thompson v. Paseo Manor South, Inc., Mo.App., 331 S.W.2d 1, we considered a case where a child was burned when she fell from her bed onto an exposed heated pipe in the apartment occupied by her father as a tenant. We said (4) that where facilities are reserved by the landlord for use in common by his tenants as a group (as is the case here), he is under a duty to exercise ordinary care to keep the reserved portion of the premises in a reasonably safe condition for the use of his tenants, and will be liable to answer in damages for his failure so to do.

The evidence here is such as, if believed, would justify a jury in finding that the merry-go-round posed a danger to children should they use it as plaintiff was using it at the time he was injured; that it was so used by him and by other children on many occasions; and that defendant had knowledge that such use was being made of it. We said, at page 7 of the Paseo Manor case, that it is not the unusual manner of receiving injuries that determines liability, but whether the defendant could have reasonably anticipated that a child would receive injuries in that manner; that while the likelihood of a future happening is the test of the duty to anticipate, this does not mean that the chances in favor of the happening must exceed those against; not the balance of

probabilities, but of the existence of *some* probability of sufficient moment to induce the reasonable mind to take precautions which would avoid it.

■ Defendant knew that plaintiff and other children would and did lie on their backs under the platform and push against the brace rods which angle upward and outward from the axis, thus propelling the entire mechanism around at high speed. The device was placed there for the specific attraction and interest of children, and as an inducement to parents of children to become tenants of defendant. If used in the manner that it was being used, reasonable minds should have anticipated the happening of an accident similar to that which occurred. It could have been made safe from this danger, according to the testimony of Mr. Hardy and, of course, it could have been removed. The fact that the device was similar in construction to that of many such devices on the market and in use throughout this area is no defense, if this device was dangerous to children, and if such danger should have been anticipated by a reasonable mind. Thompson v. Paseo Manor South, Inc., supra, at page 6.

Defendant also says that plaintiff was guilty of contributory negligence as a matter of law. Contributory negligence is not an issue in a case involving an infant of very tender age. Thompson v. Paseo Manor South, Inc., supra, at page 6. But what of contributory negligence as a matter of law concerning a child 10⅓ years of age when the casualty occurred?

Plaintiff was 16 years of age when the case was tried, 6 years after the event occurred. On cross-examination he stated that, for a year prior to the accident, he had been getting under the platform and propelling it by pushing against the rods with his feet; that he did it because he could make it go faster than if he pushed it while running around it; that he knew that if he raised his knee too high it might be struck by one of the rods, causing him to be hurt; that he got careless and raised his knee too high; that, had he not done so, he would not have been injured.

The rule as to whether a case should be taken from the jury on the grounds of contributory negligence has been thus stated in Holmes v. Missouri Pacific Railway Co., 190 Mo. 98, 88 S.W. 623, loc. cit. 624–625: "If the facts are such that reasonable men cannot differ in opinion about them, it is a question of law for the court to decide; but, if reasonable men might reach different conclusions on the facts, then it becomes a question which the court should submit to the jury. * * * This case is therefore reduced to this question: Was it so manifest that this child *was of an age and attainments* sufficient to understand and appreciate the *consequences* of his imprudence that there could be no two honest and reasonable opinions about it? * * * Strictly speaking, however, the question of whether a child is old enough to be held responsible for his conduct, as for contributory negligence, *is always a question of fact*, appealing to common sense, rather than to the science of law, for an answer. But when the evidence is all one way, and such that there can be but one answer to the question, the court should decide it without submitting it to the jury." (Emphasis ours.)

In Holmes v. Missouri Pacific Railway Co. (Mo. en banc), 88 S.W. 623, 625, the court quoted authorities as follows: "It is a question of *capacity* * * *. Unless the child is exceedingly young, it is usually left to the jury * * *. 'A boy may have all of knowledge of an adult respecting the dangers which will attend a particular act, but at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person. * * * a child is not negligent if he exercises that degree of care which under like circumstances would reasonably be expected of one of his years and capacity. Whether he used such care in a particular case is a question for the jury.'"

More could be written on this issue, and more decisions could be cited and discussed; but the law is as stated, and all that remains is to apply it to the facts of this case. The question of whether plaintiff, at the time he was injured, was of sufficient *mental attainment* to *appreciate* the consequences of his act is one of fact for the jury to find. The jury saw and heard him testify and can best judge as to whether, six years before the trial, plaintiff would have been capable of fully appreciating the consequences of his act.

The judgment should be affirmed. It is so ordered.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.